Franklin D. Smith, Plaintiff in Error,

*v.*

State, Defendant in Error.

(*Knoxville,* September Term (May Session), 1959.)

Opinion filed September 9, 1960.

SIDNEY DAVIS, WALTER E. FISCHER, Clinton, for plaintiff in error.

THOMAS E. FOX, Assistant Attorney General, for the State.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

Plaintiff in error Franklin D. Smith, hereinafter called defendant, was convicted of murder in the first degree without mitigating circumstances and sentenced to death by electrocution. His accomplice, George Baker, was found guilty of murder in the first degree and sentenced to serve 50 years in the State Penitentiary. Baker has not appealed.

There are 15 assignments of error, the first one of which relates to the evidence, it being alleged that there is no evidence to support the verdict of the jury. We have examined the bill of exceptions carefully and are satisfied that there is ample evidence to sustain this conviction and that the evidence does not preponderate

in favor of the innocence of the accused but preponderates heavily against his innocence.

The bill of exceptions contains slightly over 600 pages. It would serve no useful purpose to undertake to review all of this testimony in detail. Accordingly, we will give only a brief summary of the salient parts of the evidence.

Jess Fessler was shot from ambush about 1:25 P.M. on June 8, 1959, and died almost immediately without making any statement. The bullet from a 30-30 bolt action Stevens rifle entered the right portion of the upper part of his body and came out the front side, severing the aorta, causing him to fall face down at the spot where he had been standing. At the time he was engaged in a clearing operation along the creek which runs through Lake City and which was involved in the Lake City Flood Control near the town of Lake City in Anderson County; there was much of trees and bushes along both banks of the creek.

The record shows that the defendant Smith had been charged with the offense of having robbed the deceased sometime prior to this homicide and he had made overtures to the deceased that if the deceased would agree to drop the prosecution, defendant would pay back in installments the amount of money which had been taken from deceased, but that these efforts were unsuccessful. Even on the morning of the homicide it is shown that the defendant appeared at one part of the clearing operation and made inquiry as to where Mr. Fessler was but did not find him; the witnesses remembered that defendant Smith was in a 1958 black and yellow Ford automobile and that there was another man in the car who remained

in it but whom they could not see to the extent that they could recognize him. It further appears that this same car appeared about a half a mile away at another part of this clearing operation and that George Baker, the accomplice, was the one who made inquiry about Fessler, but that there was another man who remained in the car and was not seen by the witnesses at this location.

It is shown that in May immediately before this homicide a stranger purchased a rifle of this description from a pawn shop in Indianapolis, Indiana, although this rifle did not have a serial number on same. The salesman testified in person at the trial and identified Smith as fitting the description of the purchaser of the rifle.

The Lake City High School is located near this creek and between it and the creek is a large amount of underbrush and briars and some trees, and at the time of the homicide the deceased was working with his crew on the opposite bank. The defendant and his accomplice contrived and carried out the plan that Baker would steal an automobile at Clinton, Tennessee, in Anderson County, then drive to the side of the high school building where Baker would await the commission of the homicide and then the two would drive rapidly away. Smith went over into the bushes and fired the fatal shot from a concealed position in the underbrush and was then seen running from the spot. Several of the men working for Fessler, the deceased, heard the shot, saw the victim fall face down and saw a man running away from the bushes until he disappeared from view. No one could testify that it was the defendant who was running away but he was identified by several witnesses who described the olive drab or greenish colored clothes he had on, the dark or

black color of his hair (as he was wearing no hat), the approximate height and weight; these descriptions fitted descriptions given by others who had seen him that morning as well as witnesses who saw him later in the afternoon after the commission of the homicide. When he was arrested that same afternoon there were scratches on his legs.

After the event, these two men were seen riding around in various sections of Anderson County and an adjoining county and were finally arrested by the Sheriff where they had stopped along the highway. The Sheriff testified that the defendant's automobile was saturated with gasoline, both the seats, floor and the inside of the body as well, and that when he put his hand on Baker's back his shirt was saturated with gasoline.

The inference could have been drawn from this fact that, having gotten rid of Fessler, Smith intended to get rid of the only other person who might be a witness against him in the robbery case by setting fire to the automobile with Baker in the same; but irrespective of that inference, there is ample evidence of guilt without this particular inference.

Baker made a statement or confession, whichever it may be called, which was introduced in evidence but the court repeatedly instructed the jury that it was not competent against Smith, but Baker also took the stand and testified to the details of the course of action of the defendant and of himself, all of which coincided with his confession or statement and with the other various bits of evidence otherwise, except that in his testimony Baker tried to exonerate himself by claiming that he was afraid of Smith and acted under compulsion.

Another item of evidence was that the rifle used by the defendant was found in the woods a short distance from the road where Baker told the officers it had been thrown by the defendant Smith after the homicide. Also, the investigating officers found a footprint or shoetrack at the spot witnesses located as being the point where Smith was standing when he fired the shot. This print was in soft ground and indicated the person was pushing down more or less with the forepart of the shoe rather than the whole foot; it was preserved by someone having placed a board over it and when the two men were brought there, Baker's shoe was too big to fit the print, whereas Smith's shoe fit perfectly into the track.

The defendant's only defense was an alibi. He sought to prove that he was in Corbin, Kentucky, at the time of the homicide having his automobile repaired and there was some testimony that he was seen on the street in Corbin on that day, but the testimony of the automobile agency and shop personnel utterly failed to corroborate his claim of having been in the place of business at that time and the testimony of his other witnesses was simply not given any credence by the jury, especially in the face of the many witnesses through whom the State wove a web of guilt around him by accounting for his actions from about 10:00 in the morning until the late afternoon when he was arrested, in addition to the testimony of Baker.

Baker was 19 years old and Smith was 21 at the time of this homicide. Each one had served a hitch in the Army.

This was a cold-blooded, heinous, planned crime and the jury so found it to be by the extreme penalty which they

fixed on the defendant Smith and it can not be said that he was a hapless youth who did not understand the nature of his act, etc. Baker received a lesser penalty because he cooperated with the State.

Accordingly, the first assignment is overruled.

■ The second assignment of error is likewise overruled. From the argument under that head it seems that the insistence is that the testimony of the accomplice is not corroborated. Obviously there is no merit to this insistence and the same is overruled.

■ The third assignment of error is that the court erred in overruling the motion of defendant to discharge the entire panel of jurors when it was brought to the attention of the court that the defendant was brought into the courtroom with his wrists ''manacled together in front of him'' where all persons in the courtroom could see him at the time that the entire panel of jurors was present in the courtroom.

All that the record shows is that he was brought slightly inside the door of the courtroom and then was ordered immediately to be removed from the courtroom. The record, however, is silent as to who was in the courtroom and whether or not any of the jurors were present. Therefore, this assignment must be overruled.

■ The fourth assignment of error is predicated on the following: The trial judge had a large number of jurors summoned in addition to the regular panel of jurors for the 1959 May Term of the Criminal Court of Anderson County. From this total number he placed in the hat only enough of these specially summoned jurors to make 54 names when added to the regular jurors already in the hat.

Counsel for defendant insists that it was error not to place the names of all the specially summoned jurors in the hat. We think there was no error. It is apparent from T.C.A. sec. 22-233 of the 1959 Jury Act that the judge is given wide discretion in obtaining an adequate number of jurors to meet whatever situation arises.

Counsel admits that he was furnished with a copy of the jury panel and hence we do not see the point in their citing T.C.A. secs. 40-205 and 206 as well as *Link v. State,* 50 Tenn. 252.

■ The fifth assignment complains that the court overruled a motion to quash the indictment because at the time the grand jury returned the indictment in this cause the May Term of court in Anderson County had adjourned to court in course in Campbell County.

This assignment must be overruled for at least one reason and that is a motion to quash will not lie, unless the indictment is defective on its face. *State v. Davis,* 204 Tenn. 553, 322 S.W.2d 232.

Assignment six simply complains of overruling the motion for a new trial and the same is overruled.

■ Assignment seven complains of the charge of the court to this effect: "The law makes it the duty of the court to give in charge to the jury the law relative to the case on trial, and of the jury to carefully consider all the evidence delivered to them on the trial, and under the law given them by the court to render their verdict with absolute impartiality."

It is claimed that this is a violation of Art. I, Sec. 19 of our State Constitution.

228

We have dealt with this exact language in the case of *Cordell v. State,* 207 Tenn. 231, 338 S.W.2d 615 in an opinion by the author of this opinion and this day released along herewith. Further discussion is unnecessary and the assignment is overruled.

■ Assignment eight complains of the following part of the charge: "If it be shown by evidence independent of that of the accomplice that he told the truth in some material matter the jury *may* infer that he has in other material matters."

Counsel's insistence is that this language tells the jury that they *should* conclude and that same is an invasion of the province of the jury. We think counsel fails to distinguish between the words "may" and "should".

If counsel wanted the court to instruct on the doctrine of *falsus in uno, falsus in omnibus,* they should have submitted a special request to that effect.

The assignment is overruled.

Complaint is made of assignments nine to thirteen inclusive, but we have examined the charge and the discussion under each one of the assignments and find that there is no merit in same and the same are overruled.

■ Assignment fourteen complains of the introduction in evidence of a paper containing an interview of George Baker by TBI Agent Bauer containing questions and answers, because it is said that there was also a written confession made by Baker on June 11, 1959, which was 3 days after the homicide, and that this was cumulative and unnecessary and was, therefore, prejudicial to the defendant Smith.

We do not think that violated the rule in this State, because the record shows in at least 3 places, pages 61, 107 and 257, that the judge was careful to tell the jury that such confession or statement by Baker was not evidence against his codefendant Smith and then the court covered the same in the charge and we have already considered the attack made on the charge in respect to the language used, so that we must overrule this assignment; even though we realize the difficulty as suggested by the citation by counsel of the statement in 20 Am.Jur., 427, under the head of Evidence, Sec. 493, which need not be quoted.

■ Assignment fifteen complains that the State was permitted to play a recording of the above mentioned interview between the TBI Agent and Baker. The complaint seems to be that since some of the jurors could not hear the record which was being played, those who did hear it were unsworn witnesses to those who did not hear it.

The record does not support any such statement as this. What happened was (rec. 247) the court allowed the State to play the record but the thing was so difficult to hear that the court asked the witness Bauer whether he had a typewritten transcription of the evidence, the court said: "That is the reason I let you play the record. I did not know you had a transcription. Is that a verbatim transcription?

"Mr. Qualls: It is a verbatim transcription as I understand it."

Then the court permitted it to be read.

The assignment is overruled.

All assignments are overruled and the judgment below is affirmed.

It results that the defendant will be committed to the Warden of the State Penitentiary and executed as the law directs on Thursday, November 10, 1960.

The Court wishes to express its appreciation of the diligent and painstaking efforts of counsel in behalf of the defendant.